[Filing stamps: ENTERED JAN 13 1999, FILED JAN 11 1999, CLERK, U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION]

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER RAGSDALE, et al., | CASE NO. EDCV 97-0258 RT (VAPx) |
| Plaintiffs, | |
| v. | ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE, AND (2) DISMISSING THIS ACTION |
| TOM MADDOCK, et al., | |
| Defendants. | |

Defendants' motion to dismiss was submitted for decision. The court, the Honorable Robert J. Timlin, has read and considered the moving, opposing and reply papers.[1] Based on such consideration, the court concludes as follows:

I.

Background

Plaintiffs filed a class action complaint against defendants Tom Maddock ("Maddock"), James Gomez ("Gomez"), Cal Terhune ("Terhune"), Joanne Gordon ("Gordon"), John Dovey ("Dovey"), and Jay Allen, M.D. ("Allen") under 42 U.S.C. 1983, alleging that defendants deprived them of their Eighth Amendment right to be free from cruel and unusual punishment. It is alleged

---

[1] The court denies plaintiffs' request for oral argument.

1

that this constitutional right is being violated by defendants not providing safe drinking water to plaintiffs who are or have been inmates of California Rehabilitation Center at Norco, California ("CRC"). Defendants are prison officials employed by the California Department of Corrections. All defendants are sued only in their individual capacity.

Defendants' filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 28, 1997. On July 13, 1998, this court issued an order denying plaintiffs' motion for a preliminary injunction ("Order").

## II.

## Requests for Judicial Notice

Defendants' request that the court take judicial notice, pursuant to Federal Rule of Evidence 201, of documents filed in support of plaintiffs' motion for a preliminary injunction and the label of Trader Darwin's brand multi-vitamin. There being no opposition to the request, the court grants the request and will take judicial notice of these documents and their contents.

Plaintiffs' request that the court take judicial notice, pursuant to Federal Rule of Evidence 201, of the declarations of plaintiffs and James Lessenger, M.D. filed in support of their motion for a preliminary injunction and the separate declaration of Walter Ragsdale. There being no opposition, the court grants the request and will take judicial notice of these documents and their contents.

## III.

## Analysis

A.  **Standard for Motion.**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is

remote, the Court must allow plaintiff to develop her case at this stage of the proceedings. United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

In ruling on a motion to dismiss the complaint, the court may disregard allegations in the complaint if they are contradicted by facts established by reference to documents attached as exhibits to the complaint. Durning v. First Boston Corp., 815 F.2d 1265 (9th Cir. 1987).

**B.  Plaintiffs' fail to state a claim for violation of the Eighth Amendment against Maddock, Gomez, Terhune, Gordon and Dovey.**

While the U. S. Constitution does not mandate that prisons be comfortable, Rhodes v. Chapman, 452 U.S. 337, 349 (1981), nor that they provide every amenity that one might find desirable, Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), neither does it permit inhumane ones. Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994). Prison officials must provide all prisoners with the basic necessities of life, i.e. food, clothing, shelter, sanitation, medical care and personal safety. Hoptowit v. Ray, 682 F.2d at 1246; accord DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to constitutional scrutiny under the Eighth Amendment. Helling v. McKinney, 113 S. Ct. 2475, 2480 (1993).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, Farmer, 114 S. Ct. at 1977 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, id. at 1977 (citing Wilson, 501 U.S. at 297). In prison-condition cases the necessary state of mind is one of "deliberate indifference." Wilson, 501 U.S. at 302-03 (general conditions of confinement). Neither negligence nor gross negligence will constitute deliberate indifference. See Farmer, 114 S. Ct. at 1978 & n.4; see also Estelle, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e. the official knows of and disregards an excessive risk to inmate health or safety. Farmer, 114 S. Ct. at 1979. The official both must be aware of facts

///

3

from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. Id.

To state a claim under the Eighth Amendment, [the plaintiff] must, at a minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for [the plaintiff's] welfare in the face of serious risks." McNeil v. Lane, 16 F.3d 123, 124 (7th Cir. 1993).

### 1. Deprivation must be sufficiently serious.

Plaintiffs' Eighth Amendment violation is based on the allegations that the water at CRC contains high levels of manganese and as such poses health risks to the prisoners. The complaint alleges that "[p]resently the manganese level in the water are (sic) still well above the legal limit, and is presently causing severe sickness, illness, and other health related problems . . .." Compl. at ¶ 21. The complaint goes on to allege that manganese causes severe health problems. Compl. at ¶ 23.

However, the exhibits attached to the complaint belie these allegations. Exhibit A, Attachment 3 to the complaint is a copy of a letter dated August 27, 1996, authored by Toby Roy ("Roy"), District Engineer for the State of California Department of Health Services ("DHS"), Drinking Water Field Operations Branch, and sent to Marc Pelesasa, Occupational Safety and Health Manager, 63D Regional Support Command ("Pelesasa"). The letter distinguishes primary and secondary drinking water standards. Primary drinking water standards are those that "are based on studies showing that certain levels of specific minerals or chemicals do have an adverse impact on human health." Id. "Secondary drinking water standards are established based on the aesthetic quality of the water. *Water containing chemicals in excess of these standards will have no significant adverse impact on human health.*" Id. (emphasis added). The letter states that CRC is required to comply with the secondary standard (aesthetic) for manganese and that the water supply does not comply with the secondary standard. However, water which exceeds the secondary standard does not have "any significant adverse impact on human health."

Also attached to the complaint at Exhibit A, Attachment 3, is a copy of a letter written by Roy, of the DHS, to private individuals, dated June 12, 1995, which states that "[t]he literature does not indicate that manganese has any significant toxicological significance in drinking water."

In addition to these two letters, a newspaper article from the Press-Enterprise dated June 3, 1995 is also attached to the complaint at Exhibit A, Attachment 3. The newspaper article states that the CRC had been toured by the DHS and Roy of the DHS "doubted that the prison's drinking water was making anyone ill." The article also states that the water at the CRC is tested daily by a state-certified laboratory, is free of any contamination, is safe to drink and there had been no diagnosed cases of anyone at the prison becoming ill from the water. The article described manganese as "a naturally occurring mineral that discolors water and can give it a foul smell, but it is not harmful." It also referred to Julie Del, a toxicologist specializing in manganese at the Environmental Protection Agency in Washington, D.C., stating that there are no documented cases of elevated manganese levels causing stomach ailments such as those being reported at CRC.

These exhibits attached to the complaint, and incorporated by reference, contradict the plaintiffs' allegation that the drinking water at the prison is harmful to the health of prisoners and thus causes an objectively serious deprivation of their Eighth Amendment rights.

### 2. Deliberate Indifference.

In support of their allegation that the defendants acted with deliberate indifference, the complaint states that (1) certain defendants were aware of the high level of manganese in the water and all the defendants permitted the problem to persist, Complaint at ¶ 22, and (2) defendants have "refused to solve the problem of the presence of large amounts of manganese in the water, and have instead done nothing to solve the problem. Capital outlays to replace the current piping system could provide a complete solution, but the defendants have balked. Instead of solving the problem, defendants stood by and watched thousands of inmates consume poisonous water." Complaint at ¶ 25.

These allegations are also contradicted by the exhibits attached to and incorporated in the complaint, which attachments establish the following. CRC officials were aware of the elevated levels of manganese in the water, but as noted above, an elevated level of manganese in drinking water is not considered a health risk. They test the water daily, have their tests verified by an independent laboratory and the test results are submitted to the DHS. See Exhibit A, attachment 4, to the complaint, which includes a August 7, 1992 letter by Roy to Leo Garcia, Associate Warden

of CRC, and a August 7, 1992 memorandum from Sanitary Engineer Steve Williams to Roy. In addition, beginning in 1994, the CRC began formulating a plan to install a water filtration facility and in January 1995 the CRC submitted to the California Department of Corrections a plan and proposal, a Major Capital Outlay Project Request, for the construction and installation of a water filtration facility at CRC. See Exhibit A, Attachment 3, to the complaint, including the letter by Roy to Glen Blanton ("Blanton") Chief of Plant Operations III, CRC. The Major Capital Outlay Project Request for the facility was recommended by the Planning and Construction Department of CRC for the fiscal year 1997/1998. The project authorization is still pending approval of the budget by the Finance Department and the Legislature. See Exhibit A, Attachment 3, to the complaint, including Blanton's letter to Roy dated February 9, 1996. In addition, a letter dated August 27, 1996 by Roy of DHS to Pelisasa states "As you can see, the issues surrounding these water quality problems [including manganese level] are not easily or quickly resolved. CRC has made significant progress toward correcting these problems during the past five years. A new chlorination system, pumping station, and water storage reservoir have been constructed . . . new pipeline from the well field to the reducing station has been installed to replace the old piping that was occluded by manganese." The letter also states that CRC had "submitted plans for the installation of manganese treatment for it[s] wells to the California Department of Corrections for funding."

   The court concludes that these attachments as incorporated into the complaint, contradict and thus negate the allegations in the complaint and an inference of deliberate indifference by defendants. The plaintiffs must allege that defendants have been deliberately indifferent to a objectively serious condition in order to state a claim under the Eighth Amendment. These attachments show that while manganese in the water is not a health risk, it does have undesirable aesthetic consequences. The defendants knew of this problem and beginning in 1995, began a process of correction by submitting plans to the Department of Corrections to have a water filtration facility installed. The CRC is still awaiting funding of the project. The court concludes from the aforesaid attachments incorporated into the complaint that defendants have failed to sufficiently allege deliberate indifference. Deliberate indifference requires that defendants knew of

6

and disregarded a serious risk to the health or safety of the prisoners at CRC. These attachments show that defendants did not disregard the problems of the high level of manganese in the CRC's potable water which exceeded the secondary standard of water quality but did not cause a human health risk. To the contrary, they were actively attempting to correct the problem.

On the basis of the above analysis, the court concludes that plaintiffs have not stated sufficient facts to allege a claim against defendants for cruel and unusual punishment in violation of the Eighth Amendment based on the presence of manganese in the drinking water at the CRC. The court will dismiss the claim as posited on this basis without leave to amend because it concludes that plaintiffs will be unable to state sufficient facts to allege such a claim.

C.  **Plaintiffs' fail to state a claim against Allen for violation of the Eighth Amendment**

Deliberate indifference to serious medical needs of an inmate violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle v. Gamble, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin, 974 F.2d at 1059. In order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant. McGuckin, 974 F.2d at 1060. Second, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. Id.; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A

difference of medical opinion does not amount to deliberate indifference to serious medical needs. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

The complaint alleges that "Allen shirked his responsibilities and acted with conscious disregard and deliberate indifference to plaintiffs' serious medical needs by refusing to acknowledge that there was a serious health problem caused by the water, refusing to listen and take heed to the many hundreds of specific claims, and by instead advising inmates that they did not have any significant health problems, and by refusing to provide any appropriate treatment to the inmates, plaintiffs and class members herein."

The attachments to the complaint at Exhibit A, Attachment 3, show that manganese in the CRC drinking water does not have an adverse impact on human health. This negates plaintiffs' allegations in the complaint that a "serious" need for medical treatment on the part of the prisoners exists because of manganese in their drinking water. In addition, the statements by the DHS and a representative of the U. S. Environmental Protection agency in those attachments incorporated in the complaint that manganese levels in the CRC drinking water do not pose any health risks negates plaintiffs' allegations that Allen acted with deliberate indifference to their alleged serious medical needs.

Therefore, the court concludes from the attachments to the complaint which contradict the allegations in the complaint that plaintiffs have not stated sufficient facts to allege a claim against Allen for violation of plaintiffs' right under the Eighth Amendment to be free from cruel and unusual punishment, as alleged in the complaint. The court further concludes that plaintiffs will be unable to allege such a claim against Allen and, therefore, it will grant defendants' motion to dismiss the Eighth Amendment claim against Allen without leave to amend.[2] [3]

---

[2] In its foregoing analysis and conclusions the court incorporates its earlier analysis in denying plaintiffs' request for a preliminary injunction, which analysis was based on its consideration of the material of which the parties have requested this court take judicial notice for the purpose of the instant motion to dismiss.

[3] Based on the court's analysis and proposed disposition, the court will not address the defendants' other contentions that plaintiffs had not exhausted their administrative remedies and defendants were immune from this action based on qualified immunity.

## III.

## Disposition

IT IS ORDERED that:

(1) Defendants' motion to dismiss the complaint is granted with prejudice as to all defendants, and.

(2) This case is dismissed with prejudice.

DATED: 1/11/99

Robert J. Timlin
ROBERT J. TIMLIN
United States District Judge

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 1/12/99

DEPUTY CLERK